## THE KING *vs.* MAKAWEO.

EXCEPTIONS FROM CIRCUIT COURT, THIRD JUDICIAL CIRCUIT.

SPECIAL TERM, DECEMBER, 1883.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

Where the prosecuting witness, after the trial, paid for the dinner of some of the jurors, at their request; held not to be misconduct of sufficient gravity to vitiate the verdict.

*Kalaeokekoi vs. Kahanu*, 4 Hawn., 431, distinguished.

Cause of a juror's hostility, if known to defendant, must be made a ground of challenge before the juror is sworn.

New trial refused.

### OPINION OF THE COURT PER JUDD, C. J.

THE prisoner was found guilty, at the November Term of the Circuit Court for the Third Judicial Circuit, of the crime of robbery in the second degree.

His counsel now moves the Supreme Court for a new trial on three grounds:

First—That the verdict was contrary to the evidence.

Second—That there was misconduct on the part of the jury.

Third—That a juror was disqualified.

The first ground was abandoned at the argument.

The alleged misconduct of the jury is supported by affidavits of the juryman Luhiau, substantially reciting that shortly after they had rendered their verdict, five of the jury went to a Chinese restaurant near by and took dinner; after dinner the affiant was about paying for his meal, when a juryman, Kanehaku, said, "Don't you pay; let the Chinaman whom we have vindicated pay," meaning the prosecuting witness, who had been robbed. The affiant replied that this was improper, and paid for his own dinner.

David Hoakimoa says he was not one of the jury, but he was writing in the restaurant when some of the jurymen came into the dining-room, and one of them, Waipuilani, called to the cook to serve them with dinner. The cook asked, "How many are there of you?" The juryman answered, "Six of us." He then asked, "Who is to pay?" The juryman replied, "The Ookala Chinaman who was robbed will pay, because he is cleared, and we have convicted the native." Another Chinaman standing by said, "That is all right," and they were served, and the Chinaman who had been robbed handed the restaurant keeper $1.50. The affidavit of the last affiant's wife is to the same effect. Ah Wi, a Chinaman, deposes that he was employed in the Chinese restaurant, and that seven jurymen came to the restaurant and asked for dinner. "I asked who was to pay, and they said the Chinaman from Ookala, who was robbed, and he did pay. Afterwards one of the jurymen came and paid me twenty-five cents, saying that he did not want the Chinaman to pay for him."

Kanehaku swears to a counter affidavit, and says he was one of

8

the jurymen who tried Makaweo, and went to the restaurant in question, dined and paid for his own meal; that he did say that the Chinaman who had been robbed ought to pay for the dinner of the jurymen, but that Luhiau said that it was improper, and he and Luhiau paid for their meals themselves, and that the said prosecuting witness did not, before. or after the trial or at any time, offer to pay, nor did he ever pay, any money on account of affiant at the said restaurant.    That his statement that the Chinaman ought to pay was made only to Luhiau.

Waipuilani swears that he went to the restaurant, dined and paid for his meal himself, and that he was not invited by the Chinaman to dine at his expense, and never spoke to him before or after the trial.

The statement was undoubtedly made by Kanehaku, at the restaurant, that the prosecuting witness in the case of the defendant ought to pay for their dinner.   But he and Waipuilani, whom the affiants on the part of the defendant especially implicate, emphatically deny that they allowed him to pay for their meals, or that he offered so to do, and say that they paid for their meals themselves.    But the affidavits of Hoakimoa and wife and the restaurant hand are uncontradicted that the prosecuting witness in the case did pay for certain other jurors' meals.   A proper sense of honor should have prevented the jurors accepting this favor, and if it had been seasonably brought to the notice of the Court it would have subjected them to reprimand, but it does not seem to us to be misconduct of sufficient gravity to vitiate the verdict.

The thought, no doubt, originated in the juror who called out that the Chinaman ought to treat the jury to dinner, and the ignorant Chinaman no doubt thought he ought to do so, and did pay for some of them.

The case of *Kalaeokekoi vs. Kahanu,* 4 Hawn., 431, is cited, where the Court ordered a new trial.   In that case the intoxication of a juror was sufficient upon which to set aside the verdict, but the Court could not put out of sight the gross offense against the dignity and purity of jury trials by the successful defendant inviting the whole jury, before they had left the court-room, to dine at his expense.

As regards the third point. The affidavits show that one Bolabola, who was drawn on the jury in this case, had expressed an opinion before the trial, unfavorable to the prisoner, saying that he had led astray his (the affiant's) foster child, and was living with her. The prisoner makes affidavit that he was ignorant of this statement of the juror, or that he was prejudiced against him ; but the prisoner does not say whether the fact that he had led astray the juror's foster daughter, and was living with her, was true or not. It is evident that the cause of hostility must, if true, have been known to the prisoner, and it was his duty to have challenged the juror on that ground before he was sworn.

New trial refused.

*W. A. Whiting*, Deputy Attorney General, for the Crown.

*W. A. Kinney* and *C. Brown*, for defendant.

Honolulu, January 16, 1884.